### BOSSOUT *v.* ROME, W. & O. R. Co.

*(Supreme Court, General Term, Fourth Department. July 1, 1890.)*

INJURY TO BRAKEMAN—COLLISION.

Plaintiff was injured in a collision between a passenger train and a freight train, both of which belonged to defendant, and on the former of which plaintiff was a brakeman. The trains were coming from opposite directions on the same track, and it was the duty of defendant's flagman to fully stop the freight train far enough away to allow the passenger to take a switch, and then signal the passenger to come on. The flagman made some signal to the freight train, and then signaled the passenger to come on. Both trains came on, resulting in the collision. Plaintiff claimed that the freight train was not properly signaled, that the flagman was incompetent, and that defendant was negligent in employing and retaining him. *Held,* that the case should have been submitted to the jury on the questions of the negligence and incompetency of the flagman, and defendant's negligence. MARTIN, J., dissenting.

Appeal from circuit court, Jefferson county.

Action by Winfield E. Bossout against the Rome, Watertown & Ogdensburgh Railroad Company. From a judgment entered on an order dissmissing the complainant plaintiff appeals.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*D. G. Griffin,* for appellant. *Edmund B. Wynn,* for respondent.

MERWIN, J. The plaintiff was injured on the 12th day of September, 1887, by the collision of a passenger train of the defendant, upon which he was a brakeman, with a freight train of the defendant, at or near the Mill-Street

crossing, in the city of Watertown. It was alleged that the cause of the collision was the omission of one Joy, an employe of the defendant, and the flagman at that crossing, to give the proper signal to the freight train to stop. This train was coming from the east, and on the main track. The passenger train was coming from the west on the same track, but designed to take the switch near that crossing that would bring it upon the branch leading to Carthage. In order to allow this to be done it was necessary for the freight train to stop far enough eastward to allow the passenger train room to come forward and take the switch. The flagman was there, and made some signal to the freight train, and then signaled the passenger train to come on. The result was that both trains came on, and the collision occurred before the passenger train reached the necessary point to enable it to take the switch. This was at mid-day, and apparently nothing existed to prevent the flagman doing his duty, assuming he was competent. His duty was, before he signaled the passenger train to come on, to see to it that the freight train had fully stopped far enough eastward to allow the passenger train to take the desired switch. Whether he did this was, we think, upon the evi-. dence, a question of fact. The claim of the plaintiff is that the flagman was incompetent for the performance of the duties intrusted to him; that by reason of such incompetency the accident happened; and that the defendant was negligent in his employment and in retaining him, and therefore chargeable with the results of his acts. At the close of the plaintiff's evidence the defendant moved for a nonsuit upon the ground that no negligence was shown on the part of defendant in the employment of the flagman, or that the flagman was incompetent. This motion was at that stage of the case denied. At the close of the evidence it was renewed upon the same grounds. Thereupon the order was made dismissing the complaint, it being suggested that the plaintiff was in a position to be chargeable with knowledge of the flagman's incompetency, and that the flagman had in fact stopped the freight train, and was therefore not negligent.

A careful consideration of the evidence, as it is presented before us, leads to the conclusion that the case should have been submitted to the jury. It was a question of fact whether the collision was caused by the negligence of the flagman, whether such negligence was due to his incompetency, and whether the defendant was guilty of negligence in employing or retaining him. The defendant was bound to exercise reasonable care in such employment, having respect to the particular duties and responsibilities of this locality, and if it failed to do this, and loss occurred by reason of such failure without fault on the part of the plaintiff, the defendant would be chargeable. *Baulec* v. *Railroad Co.*, 59 N. Y. 362. It was also a question of fact whether the plaintiff, by reason of his opportunity of seeing the flagman, in the performance of his duties, was chargeable with knowledge of his incompetency.

The defendant further claims that a release executed by the plaintiff on the 13th January, 1887, is a bar to this action. This point was not taken on the motion for a nonsuit. This release was executed while the plaintiff was in the employ of the defendant, and is in form like the one in *Purdy* v. *Railroad Co.*, 5 N. Y. Supp. 217, decided by this court. The circumstances of this case do not, upon this subject, vary materially from the *Purdy Case.* The point, therefore, is not well taken. Judgment reversed upon the exceptions, and new trial ordered; costs to abide the event.

HARDIN, P. J., concurs.

MARTIN, J., (*dissenting.*) This action was founded on the alleged negligence of the defendant. The plaintiff was injured by a collision between a freight train and a passenger train, which were running on the defendant's railroad. The alleged cause of the collision was the omission of the defend-

ant's flagman to give the proper signal to stop the freight train so as to allow the passenger train to move forward far enough to pass over a switch onto another track. It was the duty of the flagman to give the danger signal to stop the freight train, and then to give the passenger train the safety signal, so that it might proceed to make the switch. So far as there was any proof on the subject, it was to the effect that the flagman gave the freight train the proper signal, and that it stopped in obedience to it. While some of the witnesses testified that they could not say that the train came to a full stop, others testified that it did. None testified that it did not, nor that the danger signal was not given. The proof tended to show quite conclusively that after the flagman had signaled the freight train, and it had stopped, he then turned towards the passenger train, and gave it the safety signal, and thereupon the engineer of the freight train, as well as the engineer on the passenger train, started his engine, and a collision followed. This proof may have tended to establish negligence on the part of the engineer of the freight train, but it did not show negligence in the flagman. If the engineer was negligent, the plaintiff cannot recover, as it is neither alleged nor proved that the defendant was negligent in employing him, or continuing him in its employ. I am of the opinion that the court properly held that the evidence was insufficient to justify it in submitting the question of the defendant's negligence to the jury. I have examined the exceptions taken by the plaintiff to the rejection of evidence to which he has called attention, but have found none that would justify a reversal of the judgment. I think the judgment should be affirmed.