## McNAMEE v. HUNT.

(Circuit Court of Appeals, Fourth Circuit. May 3, 1898.)

### No. 248.

1. CONTRACTOR'S NEGLIGENCE—LIABILITY OF EMPLOYER.
An employer is liable for injuries to third parties when they result directly from acts of a contractor which he had expressly authorized, or which were necessary to the performance of the contract, but not when they result from acts purely collateral to the contract, and arising indirectly in the course of performance.

2. CONSTRUCTION OF WRITTEN INSTRUMENTS—PROVINCE OF JURY.
In general, the construction of written instruments is for the court; but where the effect of papers collaterally introduced in evidence depends, not only upon the construction of the instruments, but also upon external circumstances, the inferences of fact to be drawn from such papers should be left to the jury.

3. SAME—WITHDRAWAL OF ISSUE FROM JURY.
It is reversible error for the court to take from the jury the issue as to whether or not the circumstances surrounding a contract were such that the employer must have known that blasting would be necessary in order to carry it into effect, and to find that he had such knowledge, where he expressly denies it, and there is some evidence corroborating his denial.

In Error to the Circuit Court of the United States for the Western District of North Carolina.

James H. Merrimon, for plaintiff in error.
Charles A. Moore, for defendant in error.

Before GOFF and SIMONTON, Circuit Judges, and PAUL, District Judge.

SIMONTON, Circuit Judge.   This case comes up by writ of error to the circuit court of the United States for the Western district of North Carolina.  The action was brought against the owner of a lot of land in the city of Asheville, N. C., for whom an excavation was being made for the foundation of a building in that city.   This excavation was effected by blasting; and the plaintiff below (defendant in error here) alleges that a piece of rock thrown out by the blasting broke his leg, and inflicted serious injuries on him.   The case was tried before a jury, on complaint, answer, and testimony; and a verdict was found for the plaintiff below in the sum of $8,500. After making a motion for a new trial, without avail, the plaintiff in error obtained his writ of error; and the case is before us on 24 assignments of error.

The defendant below was the legal owner of the lot in Asheville. He desired to erect a brick building thereon for the use of a Young Men's Institute, and to that end obtained the consent of the city authorities to excavate a foundation and erect the building.   He advertised for bids for the excavating work, and finally agreed with one Britt, a contractor, for the completion of the work for a lump sum of $645.   It is important to know the precise terms of the contract, and it is inserted here:

"Biltmore, N. C., April 19th, 1892.

"Bids will be received by the undersigned, up to and including the 23d April, for excavation of lot southeast corner of Eagle and Market streets. Lot is to be excavated entire length, 50 feet wide, from the line of Market street, and an average depth of 9 feet.   Particulars can be obtained from the undersigned.   Bids of stated sum for the entire work are preferred to those for cubic yard.                                   Charles McNamee."

"Asheville, N. C., April 21st, 1892.

"A bid for excavation of lot southeast corner of Eagle and Market street. Lot is to be excavated the entire 50 feet wide from line of Market street, and average depth of 9 feet, for the sum of nineteen cents (19c.) per cubic yard for earth; loose rock and hardpan, for the sum of twenty-five cents (25c) per cubic yard; hard rock, for the sum of sixty cents per cubic yard; or $645.00 (six hundred and forty-five), lump job.

"Yours, truly,                                       E. H. Britt & Co.
"To Charles McNamee, Biltmore, N. C."

Upon the receipt of which answer the said defendant, McNamee, wrote the said Britt as follows:

"Biltmore, N. C., April 30th, 1892.

"Mr. Elihu H. Britt, Asheville, N. C.—Dear Sir:   Your offer to excavate for $645.90 lot at the southeast corner of Eagle and Market streets, in accordance with the plans of the building, which you have seen, which show an excavation generally of about nine feet in depth the whole length of the lot, and fifty wide, is accepted, upon the following conditions:   First. The work is to be fully completed by the 21st day of May, 1892, under penalty of $5.00 for each day's delay after that date.   Second. The excavation is to be done absolutely in accordance with the drawings: and your bid includes the digging of a trench around the exterior lines of the excavation, as shown on the plans, of the depth required by the architect.   Third. The work to be neatly done, to the full satisfaction of the architect, Mr. R. S. Smith, and is to be paid for only upon his certificate that the work has been properly completed.   Fourth. The lines of the excavation and all the trenches are to be given by the engineer,—probably, Mr. Olney.   Please let me know if the terms of this letter are agreed to.   If they are, you may begin work Monday morning.

"Yours, truly,                                       Charles McNamee."

The gist of this action is that Britt was a negligent and careless man, within the knowledge, or means of knowledge, of McNamee; that no provision was made in the contract for the observance of proper precautions in doing a piece of work which necessarily required blasting with explosive substances in the heart of a city; that in fact the contractor did this work without taking such precautions, and so negligently that a piece of rock was thrown out by the blast, and struck the leg of the plaintiff below, who was at the door of an hotel on a public street, out of sight of the blasting. The suit proceeded upon the principle of the exception to the rule that employers are not generally liable for the acts of contractors. It rests on the exception, which is that:

"When a person is engaged in a work, in the ordinary doing of which a nuisance necessarily occurs, the person is liable for any injury which may occur to third persons from carelessness or negligence, though the work may be done by a contractor." Ware v. St. Paul Water Co., Fed. Cas. No. 17,172.

In affirming this case, the supreme court says:

"Where the obstruction or defect caused or created in the street is purely collateral to the work contracted to be done and is entirely the result of the wrongful acts of the contractor or his workmen, the rule is that the employer is not responsible. But where the obstruction or defect which occasioned the injury results directly from the acts which the contractor agreed and was authorized to do, the person who employs the contractor, and authorizes him to do those acts, is equally liable to the injured party." Water Co. v. Ware, 16 Wall. 576.

The court adopts the language in City of Chicago v. Robbins, 2 Black, 428:

"If the nuisance occurs necessarily in the ordinary mode of doing the work, the occupant or owner is liable. But, if it is from the negligence of the contractor or his servants, then he alone should be responsible."

And adds:

"Common justice requires the enforcement of that rule, as, if the contractor does the thing which he is employed to do, the employer is as responsible for the thing as if he had done it himself; but if the act complained of is purely collateral to the matter contracted to be done, and arises indirectly in the course of the performance of the work, the employer is not liable, because he never authorized the work to be done."

This being so, a decisive question in the case is whether, when McNamee made this contract, he authorized blasting to be done in order to complete it; or, in other words, whether, in order to fulfil his contract, the contractor necessarily had to blast, and McNamee knew this. If blasting was not in terms authorized, or if blasting was not necessary to be used in performing the contract of excavating the foundation, or if McNamee did not contemplate blasting, then blasting which injured the plaintiff below was purely collateral to the work contracted to be done, and McNamee would not be liable, because he never authorized blasting to be done. Examining the contract, we see that blasting is not provided for in express terms. The advertisement called for bids at a stated sum, and not for bids by cubic yard. The bid does refer to excavating hard rock at so much per cubic yard. But, following the advertisement, the lump sum offered is accepted, and nothing is said about blasting in the

acceptance. The general rule unquestionably is that it is the duty of the court to construe all written instruments. But where the effect of a written instrument collaterally introduced in evidence, as these papers are introduced here, depends, not merely upon the construction and meaning of the instrument, but upon extrinsic facts and circumstances, the inferences of fact to be drawn from it must be left to the jury. In Etting v. Bank, 11 Wheat. 59, Chief Justice Marshall, for the court, declares the law thus:

"Although it is the province of the court to construe written instruments, yet when the effect of such instruments depends, not merely on the construction and meaning of the instruments, but upon collateral facts in pais, and extrinsic circumstances, the inferences of fact to be drawn from them are to be left to the jury."

The same principle is affirmed and applied in Barreda v. Silsbee, 21 How. 168. In Richardson v. City of Boston, 19 How. 270, it is expressed in this way:

"It is the duty of the court to construe written instruments, but their application to external objects described therein is the peculiar province of the jury."

In West v. Smith, 101 U. S. 270, we find the doctrine expressed in these words:

"Doubtless the general rule is that it is the province of the court to construe written instruments. But it is equally well settled that when the effect of the instrument depends, not merely on its construction and meaning, but upon collateral facts and circumstances, the inference of fact to be drawn from the paper must be left to the jury; or, in other words, when the effect of a written instrument collaterally introduced in evidence depends, not merely on its construction and meaning, but also on extrinsic facts and circumstances, the inferences to be drawn from it are inferences of fact, and not of law, and, of course, are open to explanation."

When the construction does not depend in any degree on oral testimony or extrinsic facts, but wholly on the writing, a pure question of law is presented, which must be decided by the court. Hamilton v. Insurance Co., 136 U. S. 255, 10 Sup. Ct. 945; Hughes v. Mortgage Co., 140 U. S. 104, 11 Sup. Ct. 727.

The evidence tends to show that there was nothing in the surface appearance of this lot to indicate that blasting was necessary. McNamee, in his evidence, without objection, swore that there was not, that in fact he did not think there was any, and that in point of fact he did not suppose that there was any necessity for the use of blasting. There may have been an inference from Britt's bid that blasting was necessary, as he included in his bid a charge for removing "hard rock." But this was only an inference, and the offer was neither accepted nor noticed by McNamee. It therefore becomes a question of fact whether the condition of the soil where the foundation was to be dug was such that McNamee must have known that blasting was necessary, and also whether he did not acquire this knowledge during the performance of the contract. He denies any such knowledge. These questions of fact were for the jury to answer, but his honor, the presiding judge, in submitting the issues to the jury, took from them the seventh issue. It is in these words:

"(7) Was the said Britt so employed with the knowledge, or in contemplation, on his [defendant's] part, that blasting with gunpowder, dynamite, or other dangerous agency, would be necessary, or would be used, in making the excavation?"

His honor took this issue away from the jury, and it is marked, "Yes (by court)." In this we are of opinion that there was reversible error. This renders unnecessary any discussion of the other points raised on this writ. The judgment of the circuit court is reversed, and the cause is remanded to that court, with instructions to grant a new trial. Reversed and remanded.